NOT DESIGNATED FOR PUBLICATION

No. 127,644

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM DALE HANE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Dickinson District Court; BENJAMIN J. SEXTON, judge. Submitted without oral argument. Opinion filed March 27, 2026. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Andrew J. Lohmann*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., ISHERWOOD and HURST, JJ.

PER CURIAM: William Dale Hane pled guilty to two counts of aggravated sexual battery, and the district court sentenced him to a term of imprisonment followed by lifetime postrelease supervision. In imposing that sentence, the district court concluded that Hane was at least 18 years old at the time he committed the underlying crimes. In support of that conclusion, the plea agreement stated Hane's age as 52, and Hane affirmed his age during a colloquy with the district court at both the plea and sentencing hearings.

1

Lifetime postrelease supervision is statutorily required for offenders aged 18 or older convicted of a sexually violent crime—which includes Hane. However, Hane claims the district court erred by engaging in factfinding to conclude he was at least 18 years old at the time of the crime, violating his right to a jury trial.

Assuming the district court erred by finding Hane 18 or older at the time of the crimes without a sufficient jury trial waiver as to the age element, any error is harmless. Therefore, Hane's sentence is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to a plea agreement (the Agreement), on November 1, 2023, Hane pled guilty to two counts of aggravated sexual battery in violation of K.S.A. 21-5505(b)(1). The acts underlying his charges occurred on or about May 8, 2022, and August 9, 2022. Hane's age was not an element of the charges to which he pled guilty, and it was not included in the amended charging document. However, as part of the Agreement, Hane signed an acknowledgment of rights and entry of plea in which he wrote that he was 52 years old at the time he entered the Agreement. The Agreement also listed Hane's year of birth as 1970 as part of the signature line.

The Agreement identifies the "range of sentences and fines which may be imposed against [Hane] by the court" for each count. These include a range of confinement in prison, a maximum fine, and "post-release supervision of twenty-four (24) months." The Agreement does not mention the likelihood or even possibility of lifetime postrelease supervision. At the plea hearing, the district court confirmed Hane's understanding that he would "be looking at a post-release supervision period, commonly known as parole, of 24 months." Hane's age also came up at the plea hearing. The district court asked, "[Y]ou are 52 years of age; is that correct?" Hane replied, "Yes, sir." Hane also confirmed he read and understood the Agreement. The court asked whether the year of birth written under

Hane's signature on the Agreement, which was 1970, was true and correct, and Hane confirmed it was.

The Agreement contains the following relevant language regarding Hane's understanding of his right to have a jury trial and what that right encompassed:

> "At a trial, it would be the burden of the State of Kansas to prove, beyond a reasonable doubt, each element of the charge(s) against me before I could be found guilty.
>
> . . . .
>
> "If I were to be convicted of any offenses in this court, and if my motion for a new trial were denied, I would have the right to appeal my conviction(s) and sentence(s) to a Kansas appellate court where I would be entitled to have such court review the transcripts and record of my trial for any prejudicial error.
>
> . . . .
>
> " If I go to trial, I retain the right to appeal from any adverse ruling or order made against me by the court or jury, including the legal sufficiency of the evidence presented against me to prove my guilt, any legal defects in the criminal proceedings, the sentences or other penalties imposed, and the denial of probation."

The Agreement also contains the following language related to Hane's waiver of his right to appeal:

> "I understand that any appeal must be filed within 14 days of the date my sentence is imposed in court and that if I cannot afford an attorney or the costs of any appeal, the court will appoint counsel to represent me and will order that a transcript of the necessary portions of the proceedings [be] provided to my counsel. I understand that because of my agreement with the State, I am waiving any right to appeal any issue[] raised or that could have been raised in this case. I understand that my waiver of any right to appeal includes, and is not limited to: (1) the sentence imposed if the sentence is the presumptive sentence; (2) the accuracy of my criminal history score; (3) the accuracy of the crime severity level determination; (4) if the sentence imposed is not the presumptive

3

sentence, claims of partiality, prejudice, oppression or corrupt motive; (5) denial of a motion for dispositional and/or durational departure; (6) statute of limitations; and/ or (7) a sentence imposed that is greater than that agreed to in the plea agreement."

At the plea hearing, the State announced that Hane waived his right to appeal: "And Mr. Hane, after being made aware of and fully advised by counsel of his appellate rights, is voluntarily and knowingly waiving any or all of his rights of appeal." After explaining Hane's rights to appeal, the district court asked Hane, "Do you understand that by entering this plea of guilty, you waive each of the constitutional rights that you and I have previously discussed?" Hane answered that he did.

At the outset of the sentencing hearing, the court announced Hane's criminal history score of "I" with no objection by either party. The court stated that each count to which Hane pled guilty carried a presumptive prison sentence between 31 and 34 months and lifetime postrelease supervision. Neither party questioned nor objected to the court's statements. The district court then recognized Hane's motion for dispositional departure. Hane's counsel opened argument on the motion by explaining that at "51 years old," Hane had no previous criminal history. Hane interrupted and corrected his counsel that he was 53 years old at that time. Additionally, the victim testified at sentencing about her experience and explained the difficulty she faced "after being married to [Hane] for over 21 years."

The district court denied Hane's motion for dispositional departure and sentenced Hane to 32 months in prison on each count and ordered Hane to serve the sentences concurrently, creating a controlling sentence of 32 months in prison. The court also imposed lifetime postrelease supervision as set forth in K.S.A. 22-3717(d)(1)(G)(i).

The district court then addressed Hane's right to appeal:

"You have a right to appeal my findings here today, under K.S.A. 22-3608. You have 14 days from today's date in which to file and perfect that appeal. If you fail to file that appeal within that period of time, you would lose your right to appeal. If you could not afford an attorney for your appeal, one would be made available to you at no charge. Do you understand those rights, sir?"

After Hane answered, "Not entirely, but—" the district court repeated the same information regarding Hane's right to appeal. Hane then affirmed his understanding.

Hane now appeals.

## DISCUSSION

Hane claims the district court violated his rights by imposing lifetime postrelease supervision based on improper judicial factfinding regarding his age at the time of the criminal offense. The State disagrees but also contends that Hane waived his right to appeal by entering the Agreement. Before addressing the merits of Hane's claim, this court must determine whether Hane waived his right to appeal.

## I. HANE DID NOT WAIVE HIS RIGHT TO APPEAL POSTRELEASE SUPERVISION

The State claims that the Agreement contains a clear waiver of Hane's appellate right that prohibits this appeal. The relevant facts are undisputed. Thus, review of whether Hane waived his right to appeal is a question of law subject to unlimited review. *State v. Frye*, 294 Kan. 364, 371, 277 P.3d 1091 (2012).

The right to appeal in Kansas is statutory, and generally—except in certain circumstances not relevant here—criminal defendants have a right to appeal their

5

convictions and sentence. *State v. Moeller*, 318 Kan. 860, 870, 549 P.3d 1106 (2024). A defendant who pleads guilty may sometimes still appeal their sentence. *State v. Smith*, 311 Kan. 109, 119, 456 P.3d 1004 (2020). However, a defendant may knowingly and voluntarily waive their right to appeal. *State v. Patton*, 287 Kan. 200, 226, 195 P.3d 753 (2008); see K.S.A. 22-3608. For a plea agreement to effectively waive a defendant's right to appeal, the language must be explicit and unambiguous. *Patton*, 287 Kan. at 228-29 (holding that ambiguous language in a plea agreement must "'be strictly construed in favor of the accused'").

The Agreement states that Hane waived his right to appeal "the sentence imposed if the sentence is the presumptive sentence" or "a sentence imposed that is greater than that agreed to in the plea agreement." The Agreement also informs Hane that "any appeal must be filed within 14 days of the date [Hane's] sentence is imposed in court" and that he had a right to appellate counsel. The district court twice advised Hane at the hearing of his right to appeal the court's findings within 14 days under K.S.A. 22-3608. As in another case decided by this court, this case involves "a collision of otherwise unambiguous statements and actions." *Bennett*, 51 Kan. App. 2d 356, 366, 347 P.3d 229 (2015).

In *Bennett*, the defendant's plea agreement included a waiver of her right to appeal unless the sentence imposed exceeded 300 months. 51 Kan. App. 2d at 358. At sentencing, the court noted the presumptive sentence range was 166 to 186 months but that the parties had joined an upward departure motion seeking a 300-month sentence. The sentencing judge never asked if the defendant waived her right to submit aggravating circumstances to a jury. After imposing the sentence, the court informed the defendant of her right to appeal within 14 days. 51 Kan. App. 2d at 360. The defendant appealed, arguing her sentence was illegal.

6

The *Bennett* panel noted that the district court's appellate directions created some confusion relative to the plea agreement waiver and noted that the defendant was never advised of her right to have the factors justifying an upward departure presented to a jury. 51 Kan. App. 2d at 366-67. Once again, like in *Bennett*, the Agreement is silent regarding Hane's right to have a jury determine his age for postrelease supervision and does not unambiguously address his right to appeal the imposition of lifetime postrelease supervision. In fact, the Agreement inaccurately states that Hane faced a maximum "post-release supervision of twenty-four (24) months," and does not refer to lifetime postrelease supervision. While the Agreement states that Hane may not appeal a sentence greater than what was agreed to, which is arguably what occurred here, the court's colloquies with Hane at sentencing did nothing to cure the inaccuracy in the Agreement or any ambiguity regarding the appeal waiver. Thus, Hane could not make a knowing, voluntary waiver of his right to appeal postrelease supervision when he was not fully informed of his right to present that issue to the jury and was given inaccurate information regarding its length.

There could be no meeting of the minds regarding Hane's waiver of his right to appeal the court's imposition of lifetime postrelease supervision when Hane was not made aware of the right to present the issue to a jury. This court's review of Hane's appeal is, therefore, proper.

II. ANY ERRONEOUS JUDICIAL FACTFINDING IS HARMLESS

Hane contends the district court erred when it used his age (over the age of 18) at the time of the crime to impose lifetime postrelease supervision. Hane contends this constituted improper judicial factfinding because he never waived his right to have the State prove that fact to a jury beyond a reasonable doubt. See *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Appellate courts exercise unlimited review of a defendant's challenge alleging judicial factfinding in violation of

7

*Apprendi.* Additionally, if statutory interpretation is required, this court's review is also unlimited. *State v. Nunez*, 319 Kan. 351, 353, 554 P.3d 656 (2024).

*Preservation*

Before reviewing the merits of Hane's claim, this court must determine whether the claim is properly preserved for appeal. Generally, issues raised for the first time on appeal—even constitutional issues—are not properly before the appellate court for review. *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022). Hane concedes this issue is raised for the first time on appeal.

There are several exceptions to the general rule prohibiting appellate review of a new legal theory for the first time on appeal. 315 Kan. at 524. Hane asserts that the following two exceptions permit this court's review: (1) His claim involves only a question of law on proved or admitted facts that is finally determinative of the case and (2) this court's review is necessary to serve the ends of justice or prevent the denial of Hane's fundamental rights. See 315 Kan. at 524. In these circumstances, this court's review is prudential, and it may still decline to review a newly asserted claim even when an exception applies. See *State v. Mendez*, 319 Kan. 718, 730, 559 P.3d 792 (2024). Nonetheless, given the applicable exceptions this court elects to consider the merits of Hane's appeal.

*Error in the Jury Trial Waiver*

A defendant's right to a jury trial necessarily includes the right to have a jury determine the defendant's guilt beyond a reasonable doubt for "every element of the crime with which [the defendant] is charged." *State v. Johnson*, 310 Kan. 909, 918, 453 P.3d 281 (2019) (citing *Apprendi*, 530 U.S. at 476-77). A defendant may waive the right to a jury trial, but the "court must first obtain a constitutionally sufficient waiver." *State v.*

*Bentley*, 317 Kan. 222, 230, 526 P.3d 1060 (2023). A jury trial waiver is only constitutionally sufficient when "the court advises the defendant of their right to a jury trial, and the defendant then personally waives that right in writing or in open court on the record." 317 Kan. at 230.

In *Apprendi*, the Court clarified that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. While Hane's lifetime postrelease supervision is dictated by statute, the facts relevant to its imposition—his age at the time he committed the crime of conviction—was not reflected in the charges or admitted to by Hane. "The relevant statutory maximum for *Apprendi* purposes is the maximum a judge may impose based solely on the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

Eliminating any doubt about *Apprendi*'s application here, the Kansas Supreme Court has held that "[p]ostrelease supervision is undeniably a part of the defendant's sentence and is considered punitive." *Nunez*, 319 Kan. at 355. Thus, "judicial fact-finding which increases a term of postrelease supervision beyond the 'statutory maximum' implicates *Apprendi*." 319 Kan. at 355. A defendant convicted of a sexually violent crime in Kansas is subject to a minimum 60-month term of postrelease supervision. K.S.A. 22-3717(d)(1)(G)(i)-(ii). However, when the defendant is 18 years or older at the time of the crime, postrelease supervision is increased to a mandatory lifetime term. K.S.A. 22-3717(d)(1)(G)(i). Therefore, the conclusion that the defendant was 18 at the time of the crime increases the postrelease supervision period and implicates *Apprendi*.

The Kansas Supreme Court considered a similar issue in *Bentley* where the defendant was charged with, among other things, criminal possession of a weapon by a convicted felon, and stipulated to a fact element of that charge, but the district court

9

"failed to obtain a jury trial waiver of the stipulated-to element before accepting the stipulation." 317 Kan. at 229-30. A "district court must obtain a constitutionally sufficient jury trial waiver before a defendant stipulates to an element of a charged crime." 317 Kan. at 232. Although the *Bentley* court found the district court erred by not obtaining a jury trial waiver on each element of the charged crime, it declined to find that error structural. Rather, the court said the error was "akin to a court's failure to submit an element of the charged crime to the jury," which is "subject to harmlessness review." 317 Kan. at 233. Ultimately, because the facts showed Bentley would have stipulated to the element of the crime even if he had been informed of his right to submit the element to a jury, the *Bentley* court found the error harmless. 317 Kan. at 236. The court explained that the disputed element was "easily provable," and that there was no suggestion that Bentley meant to defend his case based on it. 317 Kan. at 235.

More recently, however, the Kansas Supreme Court considered a defendant's challenge, like Hane's here, where the State failed to submit the question of his age to the jury. *Nunez*, 319 Kan. at 352. After a jury found Nunez guilty of rape, a sexually violent offense, the district court sentenced Nunez to include lifetime postrelease supervision under K.S.A. 22-3717(d)(1)(G)(i). 319 Kan. at 355. On appeal, Nunez argued that the district court violated *Apprendi* by using his age, a fact not submitted to the jury, to enhance his postrelease supervision from 60-months to lifetime. 319 Kan. at 352, 357. The Supreme Court considered three questions raised by Nunez' appeal: "(1) did Nunez admit his age after a knowing and voluntary jury trial waiver; (2) if not, was the *Apprendi* error harmless; and (3) if the error was not harmless, what is the appropriate remedy." 319 Kan. at 355.

The court found that Nunez did not waive "his jury trial rights with respect to the question of his age. Nunez did not enter any plea agreement, he did not waive his jury trial rights, and he did not stipulate or state his age in open court." 319 Kan. at 355. The court also found that the parties did not state or dispute Nunez' age at trial. The court

10

noted that although jurors are permitted to make reasonable inferences regarding facts—Nunez' age was just never mentioned. 319 Kan. at 355. The *Nunez* court determined that the error was not harmless because there was simply no evidence of Nunez' age at trial. 319 Kan. at 356.

In *Nunez*, the court explained that the *Apprendi* rule is "about preserving and protecting a defendant's jury trial right under the Sixth Amendment [to the United States Constitution]," and "before a sentencing court may rely on a defense admission to increase the defendant's sentence, that admission must have been preceded by a knowing and voluntary waiver of the defendant's jury trial right." 319 Kan. at 354. Therefore, if the jury trial waiver was insufficient "with respect to any defense admission, that admission may not be considered by a sentencing court without running afoul of *Apprendi*." 319 Kan. at 354. This reasoning confirms that the district court's use of Hane's age, without a sufficient jury trial waiver regarding the issue, to impose lifetime postrelease supervision was an error—but that error is still subject to a harmlessness review.

*Harmlessness Analysis*

After finding an *Apprendi* error, this court must determine whether that error was harmless. An "*Apprendi* error is harmless if the reviewing court is convinced beyond a reasonable doubt the jury verdict would have been the same absent the error with regard to the omitted element, and that the omitted element was also uncontested and supported by overwhelming evidence." 319 Kan. at 356. The *Nunez* court cited to earlier cases where the court had said "errors are harmless if the record contains no evidence which '"could rationally lead to a contrary finding with respect to the element that the defendant was over the age of 18 at the time of the crime"'" 319 Kan. at 356 (quoting *State v. Reyna*, 290 Kan. 666, 682, 234 P.3d 761 [2010])." The State bears the burden of establishing the error is harmless. *State v. Wash*, 320 Kan. 646, 672, 571 P.3d 568 (2025).

11

Here, the facts fall somewhere between those in *Nunez* and *Bentley*. Hane did not have a jury trial like the defendant in *Nunez*, but Hane did enter a plea agreement which is similar to what occurred in *Bentley* when the defendant stipulated to a fact element of the charges . Like in *Bentley*, Hane's jury trial waiver erroneously omitted an element, but unlike *Bentley*, the omission related to an element used to enhance the postrelease supervision rather than a fact element of the charged offense. A panel of this court addressed a similar issue when the defendant pled no contest to two counts of aggravated sexual battery, and the State failed to obtain a jury trial waiver of the defendant's age. *State v. Duckworth*, No. 126,677, 2024 WL 4579265, at *1 (Kan. App. 2024) (unpublished opinion), *rev. denied* 320 Kan. 864 (2025).

In *Duckworth*, the plea advisory included Duckworth's attestation that he was 35 years old at the time he signed it. Duckworth acknowledged by his initials that he understood the minimum and maximum penalties for both of his crimes, including that his term of postrelease supervision would be for "Life." 2024 WL 4579265, at *1. At the sentencing hearing, Duckworth's counsel informed the district court that he received a copy of the presentence investigation report, which listed Duckworth's age as 35, and had no objections to the report. The district court sentenced Duckworth to a term in prison with lifetime postrelease supervision on each count. 2024 WL 4579265, at *1.

Duckworth challenged his lifetime postrelease supervision sentence on appeal. The plea agreement was silent on whether Duckworth's jury trial waiver included a finding of his age. Duckworth's plea agreement also included broad language that stated the district court could impose the same punishment as if he had pleaded not guilty, stood trial, and been convicted by a jury. 2024 WL 4579265, at *3. The *Duckworth* panel noted the distinction between a jury trial like in *Nunez*, "which focuses on uncontested elements and overwhelming evidence of an omitted element," and a plea agreement. 2024 WL 4579265, at *4. The panel aptly reasoned that when a defendant enters a plea, "no

12

evidence of anything . . . [i]s presented to a jury so it could never be uncontested or supported by overwhelming evidence." 2024 WL 4579265, at *4.

The *Duckworth* panel then considered the harmlessness test enunciated in *Bentley*: "An admission that lacks a valid jury trial waiver appears analogous to the omission of an element of the offense, as described in *Bentley*, when there was an ineffective stipulation to an element." 2024 WL 4579265, at *5. The panel was "firmly convince[d]" by the record that Duckworth would have elected to waive a jury trial on the age issue had he been fully informed of his right to submit that issue to a jury on the State's evidence. 2024 WL 4579265, at *6. The *Duckworth* panel also considered the harmlessness test under *Nunez*: "[E]ven if the traditional harmless error test applies, the State has shown beyond a reasonable doubt the error did not affect the outcome in light of the entire record." 2024 WL 4579265, at *6.

As in *Duckworth*, the error here is harmless under either test. While neither the *Bentley* nor *Nunez* test perfectly fits the facts here, they both provide useful guideposts. In *Bentley*, the defendant stipulated to an element of a crime and the court failed to ensure the defendant waived his right to a jury trial on that element—which is similar to what occurred here, where the court failed to obtain a jury trial waiver for the age element necessary to impose lifetime postrelease supervision. In both circumstances, the missing element was essential to either the conviction or the sentence.

Like the defendants in *Nunez* and *Duckworth*, Hane does not contend he was under the age of 18 when he committed the crime of conviction. Additionally, Hane acknowledges that he confirmed he was 52 years old when he signed the Agreement. He filled in the blanks of the Agreement by handwriting his age and years of school: "I am 52 years old and have completed 14 years of school." Hane also confirmed his age on the record at the plea hearing. There is no indication that Hane's age could have or would have been a contested issue at trial. However, unlike in *Duckworth*, Hane's plea advisory

13

document erroneously stated he would be subject to 24 months' postrelease supervision rather than the statutorily mandated lifetime postrelease supervision. Additionally, at the plea hearing, the district court confirmed Hane's understanding that he would "be looking at a post-release supervision period, commonly known as parole, of 24 months."

Despite these misstatements about the term of postrelease supervision, this court finds nothing in the record suggesting a reasonable possibility that the failure to inform Hane about his right to a jury regarding the fact of his age impacted his decision to plead guilty pursuant to the Agreement. Hane was originally charged with two counts of rape, a severity 1 person felony, and two counts of domestic battery. For the rape charges, Hane faced a minimum presumptive prison sentence of 147 months *and* lifetime postrelease supervision. K.S.A. 21-6804(a); K.S.A. 22-3717(d)(1)(G), (d)(5)(A). In exchange for his agreement to plead guilty, the State amended the charges to two counts of aggravated sexual battery, a severity level 5 person felony, which carried a much shorter possible prison term of 31 to 34 months. See K.S.A. 21-6804(a). In both instances, Hane faced lifetime postrelease supervision. Moreover, the Agreement did not guarantee Hane only 24 months of postrelease supervision. In fact, the Agreement clearly stated that the court was not bound to follow the sentencing terms in the Agreement and that Hane was subject to the maximum penalty prescribed by law for those crimes:

> "I understand from discussion with my attorney, and I have been advised by the court, that regardless of the plea agreement between myself, through my attorney, and the County Attorney, this court is not bound to agree to, nor to accept, the terms of the plea agreement. I further understand that if I enter a plea of guilty or nolo contendere (no contest), this court may impose against me *any or all of the maximum penalties and the maximum fines in combination*, . . . and may take whatever other action the court deems appropriate and which is permitted by law, to ensure the public safety." (Emphasis added.)

14

While the Agreement incorrectly stated the postrelease supervision length, that was not guaranteed, and there is no indication that Hane's willingness to plead guilty to the lesser offenses related in any way to the amount of postrelease supervision that would be imposed. Hane's age met the statutory requirement, was easily proven, was affirmed in open court, and there is no indication Hane could have defended against it had he gone to trial. Moreover, at sentencing the district court correctly explained that Hane was subject to lifetime postrelease supervision. This court finds no reasonable possibility that the failure to inform Hane of his right to have a jury determine whether he was at least 18 years old at the time of the crime impacted his decision to enter the Agreement. Other panels of this court have reached this same conclusion when faced with similar facts. See *Duckworth*, 2024 WL 4579265, at *6; *State v. Cook*, No. 119,715, 2019 WL 3756188, at *2 (Kan. App. 2019) (unpublished opinion) (no violation when guilty plea included defendant's age and he openly admitted his age in open court); see also *State v. Sanders*, 65 Kan. App. 2d 236, 253, 563 P.3d 234 (*Apprendi* violation harmless when jury not asked to find defendant was over 18 but officer testified defendant was 43 years old and defendant did not contest it), *rev. denied* 320 Kan. 867 (2025).

However, a panel of this court, under strikingly similar facts, recently found that the harmlessness standard in *Bentley* did not apply to the State's failure to obtain a jury trial waiver as to a finding of the defendant's age for the purpose of imposing lifetime postrelease supervision. *State v. Contreras*, 66 Kan. App. 2d 182, 190-91, 579 P.3d 1278 (Kan. App. 2025). In *Contreras*, the panel determined that the issue was more akin to *Nunez*, and found the error was not harmless. While the issue in *Bentley*—the failure to obtain a sufficient jury trial waiver for every element of the charged offense—is different than the failure here to obtain a sufficient jury trial waiver related to a finding of the defendant's age, this court finds them analogous.

This case is not about whether the failure to submit an element to a jury was harmless as in *Nunez,* but about whether the failure to notify the defendant of a right to

15

submit the element of their age to a jury (when the defendant has not elected to submit any other elements of a case to a jury) was harmless. In *Nunez*, the defendant opted to have a jury find each element of the charged offenses beyond a reasonable doubt—but the jury was presented with no evidence of defendant's age. That poses a different analysis than here where the defendant chose not to have a jury trial but instead entered a plea agreement. When a defendant has knowingly and voluntarily waived their right to a jury trial as to the essential elements of the charged crimes, the harmlessness of a failure to obtain a sufficient waiver of their age related to postrelease supervision must be viewed within that framework.

However, even if this court applies the traditional harmlessness standard articulated in *Nunez*, the error here is harmless. As in *Brown*, there is nothing in the record that "'could rationally lead to a contrary finding with respect to the element that the defendant was over the age of 18 at the time of the crime.'" *State v. Brown*, 298 Kan. 1040, 1049, 318 P.3d 1005 (2014) (quoting *Reyna*, 290 Kan. at 682). Hane chose to waive his right to a jury trial on the essential elements of his charges and does not contend he was under 18 at the time of the crime. Hane admitted his age of 52 and birth year of 1970 in the Agreement and affirmed his age in open court. Therefore, this court is convinced beyond a reasonable doubt that Hane's age at the time of the criminal offense was uncontested and supported by overwhelming evidence and the outcome—Hane's guilty plea—would have been the same had the district court obtained a sufficient jury trial waiver regarding the issue of his age.

In an alternative argument, the State contends that a district court does not engage in judicial factfinding in violation of *Apprendi* by concluding that a defendant in an adult criminal proceeding is at least 18 years old if there is no record or argument to the contrary. The State also argues that lifetime postrelease supervision is the general rule and that the burden was on Hane to show he fit in the 60-month exception by presenting evidence he was under 18 years old. For example, the State points out that before K.S.A.

22-3717 was amended in 2017, the statute mandated lifetime postrelease supervision for everyone convicted of a sexually violent crime, regardless of age. The State concedes it is raising these arguments to preserve them for review by the Kansas Supreme Court in recognition that this court is duty bound to apply the legal precedent as elucidated by that court. *State v. Vrabel*, 301 Kan. 797, 809, 347 P.3d 201 (2015). Therefore, this court will not engage in hypothetical analysis but will stand on application of the current legal standards.

CONCLUSION

Pursuant to the Agreement, Hane pled guilty to two sexually violent crimes which carried a statutory term of lifetime postrelease supervision for defendants at least 18 years old at the time of the crime. Consistent with the statutory requirement, and the district court's conclusion that Hane was well over 18 years old at the time of the crime, the court sentenced Hane to a term of imprisonment and lifetime postrelease supervision. However, the Agreement did not sufficiently waive Hane's right to a jury trial on the issue of his age—nor did the Agreement unambiguously waive Hane's right to appeal regarding this issue.

While the district court's use of Hane's age to enhance the imposed postrelease supervision violated *Apprendi* because it failed to obtain a sufficient jury trial waiver on the issue, the error was harmless. Hane entered a beneficial plea agreement that stated his age and birth year, he admitted his age at the plea hearing, and there is nothing suggesting Hane could have raised a defense to his age at trial. The Agreement also stated that the court could impose the maximum sentence despite the parties agreeing to more favorable terms. This court is convinced beyond a reasonable doubt that the fact of Hane's age would not have been otherwise decided at trial and that Hane would have still entered the beneficial plea agreement had he been presented with constitutionally sufficient notice and opportunity to waive his jury trial right regarding his age.

17

Affirmed.